UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13533-GAO

KAREN KROL,
Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Defendant.

OPINION AND ORDER
March 29, 2017

O'TOOLE, D.J.

The plaintiff, Karen Krol, appeals the denial of her application for Social Security

Disability Benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of

Social Security ("Commissioner"). Before the Court are Krol's Motion for Order Reversing the

Commissioner's Decision (dkt. no. 11) and the Commissioner's Motion to Affirm the

Commissioner's Decision (dkt. no. 14). After consideration of the administrative record and the

parties' memoranda, the Court now affirms the Commissioner's decision because there is

substantial evidence in the administrative record to support the decision and no error of law was

made.

I.    **Procedural History**

Krol applied for DIB on June 14, 2012 and applied for SSI on July 31, 2012. Both

applications alleged disability beginning January 13, 2012. (Administrative Tr. at 120–26, 159,

---

[1] Nancy A. Berryhill is now the acting commissioner of the Social Security Administration.
Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Berryhill is automatically substituted
as the defendant in this action.

750–60 [hereinafter R.]).[2] Her application for DIB was denied initially on December 21, 2012 (id. at 64–66), and again upon reconsideration on August 7, 2013, (id. at 68–70). Krol's application for SSI was denied on August 15, 2012, (id. at 761–69), and was then "escalated to the hearing level" and associated with the application for DIB, (id. at 119A). Krol requested a hearing, (id. at 71–72), which was held before Administrative Law Judge Stephen C. Fulton on May 1, 2014, (id. at 789–829). The ALJ subsequently issued an unfavorable decision, finding that Krol could perform her past relevant work as a medical records clerk based on her residual function capacity ("RFC"). (Id. at 15–33.) Accordingly, the ALJ found that Krol was "not disabled" pursuant to the Social Security Act. (Id. at 33.) On August 11, 2015, the Appeals Council denied Krol's request for review. (Id. at 9–11.) This denial rendered the ALJ's decision the final decision of the Commissioner, and made the case suitable for review by this Court pursuant to 42 U.S.C. § 405(g).

## II.  Discussion

This Court's review of a denial of social security disability benefits is limited to an evaluation as to whether the "ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); accord Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The evidence is considered substantial when it is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), and an ALJ's determination supported by substantial evidence must be upheld "even if the record arguably could justify a different conclusion," Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Further, deciding issues of

---

[2] The administrative record is in its original paper form, with the page numbers in the upper right-hand corner of each page.

credibility is the "prime responsibility" of the ALJ. <u>Rodriguez v. Celebrezze</u>, 349 F.2d 494, 496 (1st Cir. 1965).

On appeal, Krol argues that the ALJ's decision should be overturned both for legal error and for lack of substantial evidence in the record to support the decision. Specifically, Krol argues that the ALJ erred by: (1) inadequately considering the opinions of certain of Krol's therapists and nurse practitioners; (2) finding that none of Krol's mental impairments were severe;[3] (3) failing to consider Krol's testimony regarding pain; (4) inaccurately citing the record regarding Krol's activities of daily living ("ADLs"); (5) citing evidence in a biased manner; and (6) finding that Krol could do light work.

There is no reason to outline the details of Krol's medical history or of the DIB and SSI application process here except as is necessary to discuss the specific objections made to the Commissioner's decision.

A.   <u>The ALJ's Decision Properly Weighed the Evidence of Krol's Treating Therapist and Nurses</u>

Krol first contends that the ALJ failed to properly weigh the medical evidence when he gave "less weight" to the opinions of Krol's treating therapist, Helen Ekmekchi, a licensed social worker, and nurse practitioners Kathryn Kieran and Michele Adam. (R. at 23.)

Under the relevant regulations, therapists and nurse practitioners are not among the recognized "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). Their opinions therefore are not afforded "controlling weight" under the treating physician's rule. <u>See</u> <u>id.</u> § 404.1513(c). The ALJ must nevertheless evaluate every medical opinion received. <u>Id.</u> § 404.1527(c). When a treating source is not given "controlling weight," the weight attributed to the

---

[3] Krol argues that the ALJ made an error of law and that the finding was not supported by substantial evidence.

opinions is to be determined by the ALJ based on the application of the following factors: (1) the examining and/or treatment history between the treating source and the claimant; (2) the length and frequency of that relationship; (3) the nature and extent of the relationship; (4) the strength and sufficiency of the evidence forming the basis for the opinion; (5) the consistency of the opinion with the record as a whole; (6) the specialty, if any, of the source; and (7) any other factors the claimant brings to the ALJ's attention. See id., § 416.927(c). Ultimately, in determining how much weight to give a therapist's opinion, "an ALJ is only constrained by the duty to reach a conclusion supported by substantial evidence in the record." Gagnon v. Astrue, Civil Action No. 11-CV-10381-PBS, 2012 WL 1065837, at *5 (D. Mass. Mar. 27, 2012) (citation omitted).

Here, the ALJ considered therapist Ekmekchi's opinion as required by § 404.1527(c), and the ALJ's treatment of that opinion is supported by substantial evidence. In her March 31, 2014, opinion, Ms. Ekmekchi concluded that Krol exhibited symptoms of anxiety, difficulty being around people, moderate difficulty in maintaining social functioning, and a marked deficiency of concentration. (R. at 681–87.) The ALJ gave the opinion "less weight" because it was inconsistent with the overall weight of the record, including the claimant's treatment history, her daily activities, and her own statements. (Id. at 23.)

The claimant's treatment history demonstrates that many of her mental impairments have been treated effectively with medication. For example, the claimant herself stated in the hearing before the ALJ that the medication she takes to combat her Attention Deficit Hyperactivity Disorder ("ADHD"), which impacts her ability to concentrate, is "a miracle thing" that helps reduce her symptoms. (Id. at 812–13.) She also noted in her function report that with medications she can pay attention "pretty well" and "usually" finishes what she starts. (Id. at 188.) The claimant's medical records also contains evidence that Krol's anxiety was reduced with

medication. (See, e.g., id. at 612, 629.) Furthermore, the record indicates that the claimant is able to carry out daily tasks such as making quick meals, doing laundry, and shopping for groceries with assistance from her brother. (Id. at 185–86.) The ALJ therefore did not err in his decision to give Ms. Ekmekchi's opinion "less weight" in light of the inconsistencies in the opinion with other information and assessments in the record as a whole.

Similarly, the ALJ's consideration of the treatment records of nurse practitioners Kieran and Adams satisfied the requirement that the ALJ reach a conclusion supported by substantial evidence in the record. See Gagnon, 2012 WL 1065837, at *5. These nurse practitioners' findings include that Krol suffered from anxiety, trouble concentrating, insomnia, and depression. As discussed, the record provides ample evidence that the claimant's symptoms were controlled and improved with medication. (See, e.g., R. at 401, 603, 612, 659.) Furthermore, ALJs are permitted "to piece together the relevant medical facts from the findings and opinions of multiple physicians." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). It is an ALJ's responsibility, and was therefore within his discretion, to consider the evidence as a whole, including evidence that points in different directions, and make rational judgments based on the information available. In doing that, an ALJ may discuss certain opinions in brief while relying more heavily on others in reaching and explaining his decision.

There was no error in the ALJ's consideration and treatment of the opinions of treating therapist Ekmekchi and nurse practitioners Kieran and Adam.

B.     The ALJ Did Not Err by Finding that Krol's Mental Impairments Were Not Severe Because that Finding Was Supported by Substantial Evidence

Krol argues that the ALJ erred at law when he found that none of the claimant's mental impairments were severe. See 20 C.F.R. § 404.1520(c). She further argues that this finding was not supported by substantial evidence in the record.

5

The ALJ found Krol's posttraumatic stress disorder ("PTSD"), anxiety, and ADHD "to be non-severe because they do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. at 22.) He noted in particular that these impairments date back several years before her alleged disability onset date, during which time Krol was employed. (Id.) He also noted that treatment and medication seemed to improve her condition overall, despite increased symptoms "at times."[4] (Id.)

Krol's primary objection to the ALJ's analysis is that the ALJ committed legal error by conflating her mental impairments in his discussion thereof. Krol also argues that the ALJ erred by failing to address the claimant's PTSD diagnosis.

To the contrary, the ALJ noted each of Krol's diagnoses, (id.), and the analysis met the requirement under 20 C.F.R. § 404.1520a(c)(3) that the ALJ consider each of the four areas of functional limitation: difficulty in maintaining social functioning; activities of daily living; maintaining concentration, persistence, or pace; and episodes of decompensation. With respect to the first three areas of functional limitation, the ALJ concluded that the evidence was consistent with no more than a mild limitation. (R. at 22.) With respect to the fourth functional area, the ALJ found that the claimant had experienced no episodes of decompensation. (Id. at 23.)

The record also supports the ALJ's conclusion that Krol's history of mental impairments dates back to before the alleged onset of her disability. The medical records indicate that Krol was being treated for anxiety as early as 2008, (id. at 316), and attention-deficit disorder as early as 2011, (id. at 434).

---

[4] The record indicates that these upticks in Krol's symptoms were due to external stressors such as her housing situation, her daughter's health and stability, and the anniversary of her ex-husband's death. (R. at 632, 635, 643, 659, 664.)

While the ALJ conducted a relatively limited analysis of Krol's PTSD, this too is consistent with the record, which does not reflect an escalation in Krol's PTSD symptoms. Rather, Krol's treatment history indicates that her PTSD was regarded as an anxiety disorder, (see, e.g., id. at 401, 420, 461), and Krol self-reported that her anxiety medication helped treat her PTSD symptoms, (id. at 213, 226).

Even if the ALJ erred by failing to devote individualized attention to the claimant's PTSD diagnosis, any such oversight was harmless because there is ample evidence in the record that Krol's mental impairments did not meaningfully limit her ability to do basic work activities during the time period in which she alleges disability as required to determine that an impairment is "severe." See 20 C.F.R. §§ 404.1520, 404.1521(a). First, Doctors McKenna and Murphy, who are advising psychologists to the Disability Determination Service, both found that the medical evidence of record did not establish the presence of a severe mental impairment. (R. at 41, 55–56.) Second, the claimant's own function report only mentions the mental limitations of "terrible problems with memory," (id. at 185), and a "very short temper," (id. at 188), but goes on to note that with medication she is able to pay attention "pretty well," (id.), usually finish what she starts, (id.), and follow written and spoken instructions, (id.). She reported no problem getting along with authority figures, (id. at 189), and no change in social activities since the alleged onset of her impairments, (id. at 188). Third, the mental status examinations in the record generally reflect Krol's anxious mood, but find her to be coherent and cooperative, and do not find her to suffer from delusions or homicidal or suicidal thoughts. (See, e.g., id. at 401, 406, 408, 572.) Fourth, though the claimant testified about her PTSD, stating that she has nightmares, does not like to be around loud noises, and does not like to be near men, the ALJ was within his role as trier of fact in discounting the aspects of her testimony that went beyond the objective medical evidence.

"[T]he resolution of conflicts in the evidence is for the Secretary, not the courts," <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citing <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

"[W]here the facts permit diverse inferences, [a court] will affirm the Secretary so long as the inferences drawn are supported by the evidence." <u>Baez Velez v. Sec'y of Health & Human Servs.</u>, 993 F.2d 1530, at *7 (1st Cir. 1993) (per curiam) (unpublished table decision) (citing <u>Rodriguez Pagan</u>, 819 F.2d at 3). Here, the ALJ clearly and carefully considered the evidence, both testimony and medical records, proffered by the claimant. Just as in <u>Torres v. Barnhart</u>, "[t]he clear implication of the ALJ's decision is that the plaintiff's conditions can be controlled if she complies with her medication regime." 249 F. Supp. 2d 83, 97 (D. Mass. 2003).

 C.  <u>The ALJ Properly Considered Krol's Allegations of Pain</u>

Krol argues that the ALJ did not consider her allegations of pain as reflected in the record and in her testimony. While an administrative law judge must consider a claimant's subjective allegations of pain, he is not required to accept those allegations, and may reject them where they are unsupported by corroborating medical evidence, treatment history, and activities of daily living. <u>See</u> <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 194–95 (1st Cir. 1987) (per curiam); <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 22–23 (1st Cir. 1986); 20 C.F.R. § 416.929.

Here, the ALJ's decision notes the numerous references in the claimant's medical records to her degree of pain, indicating that he did in fact consider the claimant's pain in reaching his decision. (R. at 24–30.) The ALJ also had the opportunity to observe Krol in person, and he concluded that to the extent the claimant testified to limitations greater than what he found, her statements were not consistent with the overall weight of the evidence. (<u>Id.</u> at 31.) As noted

previously, credibility assessments are the "prime responsibility" of the ALJ. <u>Rodriguez v. Celebrezze</u>, 349 F.2d 494, 496 (1st Cir. 1965). "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." <u>Frustaglia</u>, 829 F.2d at 195 (citation omitted). It is within the ALJ's discretion to make an unfavorable credibility determination so long as he has considered the claimant's subjective complaints and sufficiently explained his reasons for rejecting them. <u>Id.</u>

The specific findings set out in the ALJ's decision—which are supported by the evidence in the case record—provide ample support for his credibility determination, and the record makes clear that the claimant's allegations of pain were considered, if ultimately given less weight.

D.      The ALJ's Decision Accurately Cites the Record Regarding Krol's Activities of Daily Living

The claimant next argues that the ALJ's statement that Krol is "able to perform several activities that require a significant ability to sustain attention and concentration, such as reading, watching television, doing chores, cooking, shopping, and attend[ing] appointments," (R. at 22), is inaccurate. Both Krol's function report and testimony before the ALJ provide support for this assessment, however. In her function report, Krol stated that her hobbies include watching television and reading. (<u>Id.</u> at 187.) She further stated that she was able to "make very quick meals," (<u>id.</u> at 185), do laundry, with her brother's assistance in taking the laundry to the dryer, (<u>id.</u>), go shopping for food, cosmetics, and toiletries with her brother's help, and to pay bills, count change, handle a savings account, and use a checkbook, (<u>id.</u> at 186). She was also, as the record makes clear, able to attend her myriad medical appointments. In her testimony before the ALJ, the claimant reiterated that her brother takes her shopping and that her typical day includes time spent

watching television and reading. (Id. at 807, 820, 821.) Therefore, the ALJ did not err in his discussion of the evidence regarding Krol's ADLs.

E.    The ALJ's Analysis Is Fair

Krol next argues that the ALJ's decision paints a one-sided picture of her daily life and omits evidence that does not support his ultimate conclusion that Krol is not disabled. In assessing a charge of bias, the Court begins with the presumption that the ALJ is unbiased, but this "presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Johnson v. Colvin, Civil Action No. 13-40003-TSH, 2016 WL 4639134, at *12 (D. Mass. Sept. 6, 2016) (quoting Schweiker v. McClure, 456 U.S. 188, 195 (1982)). The claimant has not rebutted that presumption here.

First, Krol argues that the ALJ omitted details from her testimony that reflect the severity of her impairments, particularly with respect to her daily routine. In particular, she argues that the ALJ erred by giving less weight to the opinion contained in Exhibit 18F in part because it is illegible. "[T]he development of an adequate record requires the ALJ to make a reasonable effort to ascertain the identity of a medical source who prepares a medical source statement which provides opinions regarding a claimant's physical and/or mental limitations." Murphy v. Astrue, Civil Action No. 11-10634-JLT, 2012 WL 1866288, at *11 (D. Mass. Apr. 10, 2012) (quoting Tracy v. Astrue, 518 F. Supp. 2d 1291, 1300–01 (D. Kan. 2007)). However, "reversal of the ALJ's decision for failure to request additional information is warranted only where the ALJ's failure is unfair or prejudicial to the claimant's case." Id. (quoting Gaeta v. Barnhart, Civil Action No. 06-10500, 2009 WL 2487862, at *6, n. 4 (D. Mass. Aug. 13, 2009)).

Here, the ALJ considered the portion of the document he was able to decipher, which indicated a sedentary range of work activities, and determined that it was inconsistent with Krol's

treatment history and ADLs. Krol asserts that the ALJ did not consider her testimony in reaching this conclusion. However, the ALJ's decision includes a lengthy paragraph summarizing that testimony, which notes the "severe pain" her back spasms cause her "on an unpredictable basis," causing "her to have difficulty with prolonged sitting and standing for one week to ten days." (R. at 30.) This discerning analysis of the record does little to rebut the presumption that the ALJ is unbiased.

Next, Krol argues that the ALJ failed to explain the meaning of a low global assessment of functioning ("GAF") score. "GAF scores alone are not determinative factors in a disability finding." Dearborn v. Colvin, Civil Action No. 14-30019-MGM, 2015 WL 1321476, at *7 (D. Mass. Mar. 24, 2015) (citing Stanley v. Colvin, Civil Action No. 11-10027-DJC, 2014 WL 1281451, at *15 (D. Mass. Mar. 28, 2014)). Therefore, although treating therapist Ekmekchi cited a GAF score of forty in her evaluation, (R. at 681), that single assessment is not controlling. See Querido v. Barnhart, 344 F. Supp. 2d 236, 246 (D. Mass. 2004). In the treatment records, Ms. Ekmekchi gave Krol a GAF assessment of fifty. (R. at 572.) Other assessments in the record by other assessors were higher. The ALJ adequately explained why he afforded Ms. Ekmekchi's opinion less weight, and thus the fact of the ALJ's failure to elaborate on the GAF score noted in that opinion is insufficient to overcome the presumption that the ALJ is unbiased.

Krol also points to the ALJ's use of the word "venting" as evidence of his partiality. However, as the Commissioner rightly notes, this word twice appeared in Ms. Ekmekchi's report, where she noted that the claimant "was venting her feelings" during her appointments. (Id. at 635, 643.)

Finally, Krol argues that the ALJ only cursorily mentioned and then conflated certain portions of her history, including her history of abuse, epilepsy, and PTSD. However, in the

treatment notes in evidence, discussion of these alleged impairments was limited compared to

discussion of the claimant's ADHD, anxiety, or back pain, which the ALJ analyzes in more

depth. The ALJ is entitled to draw inferences from the record evidence, which he properly did

here in his consideration of Krol's medical history and in reaching the conclusion that her mental

impairments were not severe. See Johnson ex rel. M.C.J. v. Astrue, Civil Action No. 11-11243-

JLT, 2012 WL 1605984, at *7 (D. Mass. Apr. 12, 2012), *adopted by*, 2012 WL 1605982 (D.

Mass. May 7, 2012).

> F.   The ALJ Did Not Err in Concluding that Krol Had the Residual Function Capacity for Light Work

Krol disputes the ALJ's finding that she had the RFC to perform light work subject to

several limitations, arguing that he should instead have found that she was only capable of

sedentary work. As the preceding analysis demonstrates, surveying the record as a whole, there

is substantial evidence to support the ALJ's decision. In assessing Krol's RFC, the ALJ relied

upon the notes, findings, and opinions of physicians and other treating sources, as well as the

claimant's function report, testimony, and actual prior work history. Accordingly, the ALJ's

finding regarding Krol's residual functional capacity was supported by substantial evidence, and

that finding is affirmed.

## III.   Conclusion

In light of the foregoing, Krol's Motion for Order Reverse the Commissioner's Decision

(dkt. no. 11) is DENIED, and the Commissioner's Motion to Affirm the Commissioner's Decision

(dkt. no. 14) is GRANTED.

The decision of the Commissioner is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
